## McCurdy's Estate.

*Practice, O. C.—Power to correct errors—Fiduciaries Act of June 7, 1917.*
1. The Orphans' Court has discretionary power to correct its own records in the interest of justice; this power is inherent in the court and is not dependent upon section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447.

*Spendthrift trusts—Accumulated income and commissions due deceased beneficiary—Recoupment on account of judgment held by estate.*
2. Income accumulated at the time of the death of a beneficiary under a spendthrift trust, but not actually paid to him, is payable to his executor, and becomes a fund liable to respond to his creditors, and, like other legacies, may be recouped on account of a judgment held by the testator's trustees against the deceased beneficiary.
3. *Quere.* Whether commissions accrued in the lifetime of a deceased co-trustee, but not paid over, may be recouped on account of a judgment held against him by the trustees of the testator's estate, not decided.

Petition for order to pay and answer. O. C. Phila. Co., Jan. T., 1910, No. 87.

*Albert W. Sanson,* for executors of estate of John M. McCurdy, deceased.

*Dimner Beeber,* for trustees of estate of John K. McCurdy, deceased.

HENDERSON, J., Oct. 27, 1923.—Under the schedule of distribution filed Oct. 20, 1922, by the direction of the adjudication upon the trustees' account, there was awarded to the executor of John M. McCurdy, deceased, who had been a life-tenant under the trust, the sum of $4549.44, being John M. McCurdy's share of undistributed income up to the date of his death, March 9, 1921; there was also awarded under this schedule to the said executor the sum of $2307.46 as John M. McCurdy's share of commissions as one of the trustees of this estate, earned on converted real estate up to the date of his death.

The award not having been paid, the executors of the deceased beneficiary filed a petition for an order to pay, and this was met by an answer and counter-petition, setting up that the deceased life-tenant, whose estate is insolvent, owed John K. McCurdy $39,523.75, which had been reduced to judgment and which was owing the testator by his son at the time of the testator's death, and asking that the sum due the estate of the deceased son should be set off against this judgment debt.

In view of the fact that the orderly method of correcting an adjudication and schedule of distribution is by a petition for review, we shall treat the petition and answer as if they prayed for the opening and correction of the adjudication.

John K. McCurdy, our testator, died Oct. 13, 1895, and by his will he gave his estate to his trustees "in trust to collect the rent, interest, income and profits thereof and to pay over the same unto my five children in equal shares (naming them) for and during all the terms of their natural lives, such rent, interest, income and profits in no event to be in any way liable for the debts, liabilities, contracts or engagements of either of my said children, but in all cases to be paid to them, and in case of my daughter to be paid to her individually notwithstanding her coverture."

He further provided: "Upon the death of any of my said children leaving issue surviving, I give, bequeath and devise unto such issue absolutely the portion or share of my estate of which my said such deceased child had received the income for life, in the proportion in which it would be distributed to such issue under the intestate laws of the Commonwealth of Pennsylvania. Should such issue be minors I constitute and appoint my Executors and Trustees and the survivors or survivor, guardians and trustees of the estate

of such minor, such guardianship or trusteeship in the case of any female to continue until she reaches the age of twenty-five years."

All of the testator's children are living except John M. McCurdy, who died as above stated, in consequence of which the share of the principal of the trust estate from which he received the income during his lifetime became distributable.

An account was filed embracing the management of the estate from April 1, 1912, the date of the award to them as trustees of the balance shown by their account as executors, to March 9, 1921, the date of death of John M. McCurdy, one of the trustees, who is entitled to one-fifth of the net rent, interest, income and profits under the terms of the spendthrift trust. At the time of the audit of this account and the approval of the schedule of distribution, counsel, as well as the trustees, were under a misapprehension as to certain questions of law, and, in consequence, no claim was made to set off the judgment held by the estate against the sums due the deceased beneficiary.

It is contended that under section 48 of the Fiduciaries Act of June 7, 1917, P. L. 447, 514, superseding section 1 of the Act of April 13, 1840, P. L. 319, this application cannot be entertained; but it is overlooked that this court has discretionary power independent of the Act of 1917 to grant relief in such cases.

In Sloan's Estate, 254 Pa. 346, it was said, speaking of the Orphans' Court: "Such court, in its discretion, may correct its own records in the interest of justice, even to protect parties from the effect of their own mistakes or blunders. This power is inherent in the court independently of the Act of Oct. 13, 1840." See, also, Ehrhart's Estate, 31 Pa. Superior Ct. 120.

At the time of the original audit and approval of the schedule of distribution, counsel had overlooked the rule laid down in McIlwain's Estate, 20 Dist. R. 558, wherein, to quote the syllabus, this court said: "Where the testator gave the net income of his estate to trustees to be paid quarterly to his grandson for life, not to be anticipated nor liable to his engagements, with a limited power to appoint the principal by will: Held, that income accrued for three months prior to the death of the cestui que trust should be awarded to his executor and not to his appointees under the power."

McIlwain's Estate was rested on Walters's Estate, 223 Pa. 598, in which, as was pointed out in Neel's Estate, 252 Pa. 394-413, the will contained a discretion in the trustee to withhold the income from the spendthrift beneficiary and apply it to his support, and, in consequence, an intestacy was declared as to the accumulated income. It was a mere coincidence that the spendthrift beneficiary was the sole next of kin, but his estate received it as next of kin.

The principle, however, has been ruled in Hildebrant v. Hildebrant, 42 Pa. Superior Ct. 190, wherein a son, subject to a spendthrift provision, was given $30 quarterly during the life of his mother. He predeceased her, and it was held that the legacy continued for the life of the mother, and, notwithstanding the spendthrift provision, the quarterly sums were awarded to the son's executor. Upon this feature of the will we said in McIlwain's Estate, 20 Dist. R. 558: "It is reasonable to believe that the object of the spendthrift clause, as was said by Head, J., in Hildebrant v. Hildebrant, 42 Pa. Superior Ct. 190, was 'to put it out of the power of anybody to interfere with the prompt and regular payment to the son of the fixed sum named at the regular quarterly intervals provided for,' rather than to take from him or from his estate, in the event of his death, the income given him absolutely by the testator's will."

It should be pointed out that income from a spendthrift trust, in the hands of a beneficiary, may be the subject of an attachment, assignment, or a peti-

3 D. & C.

### McCurdy's Estate.

tion in bankruptcy, voluntary or involuntary. The will controls the income until it passes into the hands of the beneficiary or becomes due his personal representative because of his death. It is true that the income, when paid the beneficiary, is usually and successfully disposed of and removed from the grasp of the attaching creditors, whereas it is the duty of the personal representative to see that the creditor is protected. This difference should not be made the basis of any legal distinction.

To hold otherwise would be to declare unimportant intestacies in the multitude of cases of spendthrift residuary trusts.

It is thus seen that income accumulated at the time of the death of a beneficiary under a spendthrift trust, but not actually paid to him, will be payable to his executor and becomes a fund liable to respond to his creditors, and, so far as the accumulated income is concerned, that being a legacy due the beneciary, and it now being a fund for creditors, may be recouped on account of the judgment held by the trustees against the deceased beneficiary: Light's Estate, 136 Pa. 211; Hughes's Appeal, 57 Pa. 179.

The same question arises in connection with the commissions accrued in the lifetime of the deceased beneficiary, who was also a co-trustee. This question was not argued before us, but will be considered by the auditing judge at the rehearing. It is settled that commissions due a living trustee may not be attached (Adams's Appeal, 47 Pa. 94), but the auditing judge will have to consider whether this rule should be extended to include commissions due by a trust estate at the time of the death of the deceased trustee and not paid over.

The adjudication and schedule of distribution are opened and recommitted to the auditing judge for a further hearing in accordance with this opinion.